Mark Brnovich
Attorney General

James Driscoll-MacEachron, Bar No. 027828
Kara M. Karlson, Bar No. 029407
Assistants Attorney General
1275 W. Washington
Phoenix, Arizona 85007-2997
Telephone: (602) 542-8137
Fax:  (602) 542-8308
James.Driscoll-MacEachron@azag.gov

Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Brian Edward Malnes,<br><br>             Plaintiff,<br><br>vs.<br><br>State of Arizona; Michele Reagan,<br><br>             Defendants. | Case No: 3:16-cv-08008-GMS<br><br>**DEFENDANTS' MOTION TO DISMISS** |

Defendants the State of Arizona and Arizona Secretary of State Michele Reagan ("the Secretary"), through undersigned counsel, move to dismiss Plaintiff's Complaint because Plaintiff Brian Edward Malnes fails to state a claim for which relief can be granted.  Under the Eleventh Amendment, the State is immune from suit in federal court, and the Secretary is immune from a suit for damages.  With regard to the remaining claim for injunctive relief against the Secretary in her official capacity, Plaintiff cannot state a claim that Ariz. Rev. Stat. § 16-101(A)(5) violates either the Fifteenth Amendment or the Twenty-Sixth Amendment.  Thus, the Court should dismiss Plaintiff's case with prejudice.

/ / /

/ / /

## I. BACKGROUND

Criminals have had their right to vote and participate in civil society restricted since the Greco-Roman era. Jason Schall, *The Consistency of Felon Disenfranchisement with Citizenship Theory*, 22 Harvard Black Letter L.J. 53, 54 (2006). The English law preventing felons from exercising civil rights was imported to the colonies, and then quickly adopted by the majority of new States after the American Revolution. *Id.* at 55. After the Civil War, rebel States had to submit their constitutions to Congress for ratification before they could be re-admitted the Union. Even after the Fourteenth Amendment was enacted, States were re-admitted to the Union with felon disenfranchisement provisions in their state constitutions. *Richardson v. Ramirez*, 418 U.S. 34, 51-52 (1974); *see also* Cong. Globe, 39th Cong., 1st Sess. 2535 (1866) ("Under a Congressional act persons convicted of a crime against the laws of the United States, the penalty for which is imprisonment in the penitentiary, are now and always have been disfranchised."). Indeed, the Reconstruction Act of March 2, 1867, Chap. LXX, 15 Stat. 73, p 75 (1868), conditioned re-admittance on the promise that state constitutions would never be amended "to deprive any citizen or class of citizens of the United States of the right to vote in said State, who are entitled to vote by the constitution thereof herein recognized, except as a punishment for such as are now felonies at common law."

Currently, a felony conviction does not impose any restriction on a person's right to vote in only two states: Maine and Vermont. American Civil Liberties Union, *State Criminal Re-enfranchisement Laws (Map) available at* https://www.aclu.org/map/state-criminal-re-enfranchisement-laws-map (last visited Feb. 4, 2016). Conversely, Florida and Iowa both permanently revoke felon's voting rights. *Id.* The remaining forty-six states have some restrictions on a felon's ability to vote. *Id.*

It is against this backdrop that Plaintiff brings his claim alleging that Ariz. Rev. Stat. § 16-101(A)(5) is unconstitutional. Section 16-101(A)(5) bars an otherwise qualified citizen from registering to vote if he or she has "been convicted of treason or a

felony, *unless restored to civil rights.*" *Id.* (emphasis added).  By law, a person convicted of a felony may be restored to civil rights in multiple ways.  First, a person who has been convicted of a felony for the first time is entitled to automatic restoration of civil rights upon completion of their sentence, including probation, and payment of any associated fines or restitution imposed as part of the sentence.  A.R.S. § 13-912(A).  A person convicted of two or more felonies may apply for the restoration of his or her civil rights upon completion of his or her sentence and payment of associated fines and restitution.  A.R.S. §§ 13-905-906, -909, -910(A).

According to his Complaint, Plaintiff was unable to register to vote on the State of Arizona's Voter Registration webpage due to his status as a felon.[1]  Am. Compl. at p. 2, ¶ 1 (Jan. 26, 2016).  Plaintiff therefore seeks to enjoin the application of A.R.S. § 16-101(A)(5), arguing that it violates his Fifteenth and Twenty-Sixth Amendment rights.  *Id.*

## II.   STANDARD OF REVIEW

A complaint will survive a Rule 12(b)(6) motion to dismiss only if it includes enough facts to state a claim for relief that is plausible on its face.  *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008).  The plausibility standard requires the plaintiff to provide sufficient factual allegations to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)).  The Ninth Circuit thus applies to a two-step process:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an

---

[1] The online voter registration form is available at Service Arizona, Voter Registration, https://servicearizona.com/webapp/evoter/register?execution=e1s2 (*last visited* Feb. 4, 2016).  One of the first questions the form asks is whether the potential registrant is a convicted felon who has not had their civil rights restored.

3

> entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Plaintiff has not and cannot plead facts sufficient to satisfy this standard.

### III. THE ELEVENTH AMENDMENT IS DISPOSITIVE FOR THE MAJORITY OF THE PLAINTIFF'S CLAIMS.

Plaintiff seeks damages and injunctive relief from the State and from the Secretary. The Plaintiff's claims for damages are barred by the Eleventh Amendment, and only the Plaintiff's claim for prospective relief against the Secretary may proceed under *Ex Parte Young*, 209 U.S. 123 (1908).

**A. The Eleventh Amendment Bars Plaintiff's Claims for Monetary Relief.**

The Eleventh Amendment generally prohibits United States citizens from suing a State or an arm of a State in federal court. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890) (prohibiting a resident citizen of a State from suing the State in which he resides). Eleventh Amendment immunity applies to the State of Arizona and state agencies. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The Plaintiff thus cannot state a claim against the State or the Secretary of State's office for damages or prospective relief unless the State consents to the suit, waives its immunity, or the immunity is specifically abrogated by Congress. *Id.* at 99, 101-02. Here, the State has not consented to suit nor waived its immunity, and none of Plaintiff's bases for relief specifically abrogate the State's rights under the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 345 (1979) (explaining that Congress must clearly state that it is abrogating a State's Eleventh Amendment immunity and that Congress did not intend 42 U.S.C. § 1983 to abrogate State immunity from suit in federal courts). Thus, the claims against the State should be dismissed.

The claims for monetary relief against the Secretary should also be dismissed. *See Bair v. Krug*, 853 F.2d 672, 675 (9th Cir. 1988) ("[T]he [E]leventh [A]mendment

4

bars actions against state officers sued in their official capacities for past alleged misconduct involving a complainant's federally protected rights, where the nature of the relief sought is retroactive, i.e., money damages, rather than prospective, e.g., an injunction."). The Secretary State's office is unquestionably a state agency for purposes of the Eleventh Amendment. *See Pennhurst*, 465 U.S. at 100 ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). The Secretary of State's office has been a state agency since Arizona became a State in 1912, a statewide role secured by the Arizona Constitution. Ariz. Const. art. V, § 9. Moreover, the Secretary of State is reliant upon state funds for its budget,[2] which is a key factor in determining whether Eleventh Amendment immunity applies to an agency. *Savage v. Glendale Union High Sch. Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1040-41 (9th Cir. 2003). Thus, neither the State of Arizona nor the Secretary of State's Office are liable for damages in federal courts because of the immunity conferred by the Eleventh Amendment.

**B. *Ex Parte Young* Only Allows a Suit Against the Secretary for Prospective Relief.**

*Ex Parte Young* provides a limited exception to the Eleventh Amendment that allows private federal actions against state officials that will remedy present violations of federal law to prevent state officials from using the Eleventh Amendment to avoid complying with federal law. *Papasan v. Allain*, 478 U.S. 265, 278 (1986). The exception permits prospective declaratory and injunctive relief only against state officials acting in their official capacity. *Nevada v. Hall*, 440 U.S. 410, 420 n.19 (1979). This exception does not provide retrospective relief. *Pennhurst*, 465 U.S. at 105; *Jackson v. Hayakawa*, 682 F.2d 1344, 1351 (9th Cir. 1982) (distinguishing the prospective relief allowed in *Ex parte Young* with claims for compensation for past

---

[2] Arizona Secretary of State Fiscal Year 2015 Annual Report at 8, a*vailable at* http://www.azsos.gov/sites/azsos.gov/files/fy15_annual_report_online_version.pdf.

violations). Assuming that Plaintiff is suing the Secretary in her official capacity, Plaintiff cannot seek $10 million in monetary damages from the Secretary because Plaintiff is seeking redress for what Plaintiff claims is past harm. Plaintiff theoretically could proceed with a claim for injunctive relief; however, as shown below, Plaintiff has not stated a claim for relief.

### IV. PLAINTIFF HAS NOT STATED A CLAIM UNDER THE FIFTEENTH AMENDMENT.

As an initial matter, Plaintiff's Amended Complaint states only one fact that the Court should take as true: that Plaintiff could not register to vote because he had been convicted of a felony. The remainder of the Amended Complaint is a string of incorrect legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (explaining that the plaintiff's conclusion that the government adopted a law enforcement policy because of, not merely in spite of, adverse consequences to an identifiable group was not entitled to the assumption of truth because it is conclusory). In this case, nearly the entire Amended Complaint is a legal conclusion and therefore does not meet the pleading standards required by Rule 8 of the Federal Rules of Civil Procedure. *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 555 (2007) (finding that Rule 8(a)(2) requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action").

For example, Plaintiff states that:

> By using A.R.S. § 16-101(5) [*sic*], which states: "Has not been convicted of treasons or a felony, unless restored to civil rights," the Defendants are violating the 15th Amendment because incarceration in this country is slavery as defined by the 13th Amendment . . . .

Am. Compl. at ¶ 3. This legal conclusion and the others like it are not entitled to the assumption of truth.

After the statements that are not entitled to an assumption of validity are eliminated, the Court should look at the remaining factual allegations to determine if they "plausibly suggest entitlement to relief." *Iqbal*, 556 U.S. at 682. And Plaintiff's

1  lone factual allegation—that he could not register to vote because he was a felon—does
2  not suggest any entitlement to relief.
3       For his claim under the Fifteenth Amendment, Plaintiff must show that his right
4  to vote has been "denied or abridged . . . on account of race, color, or previous condition
5  of servitude." U.S. Const. amend. XV, § 1.  The Fifteenth Amendment was passed after
6  the Civil War, specifically to prohibit States from discriminating against racial
7  minorities.  For example, in *Gomillion v. Lightfoot*, 364 U.S. 339 (1960), the Supreme
8  Court held that gerrymandering the city of Tuskegee, Alabama in such a way that almost
9  all black people were excluded from city limits violated the Fifteenth Amendment.  *Id.*
10 at 341(explaining that the new boundaries would remove all but four or five of the city's
11 four hundred registered black voters, while not removing a single white voter, from the
12 city).  "When a legislature thus singles out a readily isolated segment of a racial minority
13 for special discriminatory treatment, it violates the Fifteenth Amendment." *Id.* at 346.
14      Plaintiff makes no claim that A.R.S. § 16-101(A)(5) denies the right to vote based
15 on race or color—and indeed he cannot.  Section 16-101(A)(5) is race-neutral on its face:
16 it bars all felons from voting unless their civil rights are restored, regardless of race.
17 And Plaintiff has not and cannot show that racial animus motivated Arizona's
18 disenfranchisement statutes. *Cf. Farrakhan v. Gregoire*, 623 F.3d 990, 993 (9th Cir.
19 2010) ("[P]laintiffs bringing a section 2 VRA challenge to a felon disenfranchisement
20 law based on the operation of a state's criminal justice system must at least show that the
21 criminal justice system is infected by intentional discrimination or that the felon
22 disenfranchisement law was enacted with such intent.").  In *Hunter v. Underwood*, 471
23 U.S. 222, 229 (1985), the Supreme Court found a constitutional provision
24 disenfranchising felons unconstitutional because it was clearly intended as an end-run
25 around the rights of racial minorities. *See id.* (quoting the president of Alabama
26 Constitutional Convention of 1901, John B. Knox, stating that "it is within the limits
27 imposed by the Federal Constitution, to establish white supremacy in this State").
28

A.R.S. § 16-101(A)(5) has no similar legislative history.  Plaintiff has thus failed to plead any facts that would prove a racially discriminatory intent or purpose required to sustain a claim under the Fifteenth Amendment.

Plaintiff instead argues that felon disenfranchisement is premised on a "previous condition of servitude" that cannot stand under the Fifteenth Amendment because the Thirteenth Amendment identifies criminal incarceration as "involuntary servitude."  Am. Comp. at ¶¶ 2-3.  This argument misapprehends the Thirteenth Amendment, which states "Neither slavery or involuntary servitude, *except as a punishment for a crime whereof the party shall have been duly convicted*, shall exist within the United States."  U.S. Const. amend. XIII (emphasis added).  This statement does not mean that incarceration is involuntary servitude that may not exist within the United States.  Rather, the dependent clause acknowledges that incarceration for a crime *is* constitutional when it follows from a lawful conviction and that such incarceration *is not* the evil sought to be prohibited by the anti-slavery amendments arising out of Reconstruction.  *United States v. Kozminski*, 487 U.S. 931, 943-44 (1988) ("By its terms the [13th] Amendment excludes involuntary servitude imposed as legal punishment for a crime."); *Wesley v. Collins*, 605 F.Supp. 802, 813 (M.D. Tenn. 1985) *aff'd*, 791 F.2d 1255 (6th Cir. 1986) ("Felons are not disenfranchised based on any immutable characteristic, such as race, but on their conscious decision to commit an act for which they assume the risks of detection and punishment.").  Plaintiff's claim under the Fifteenth Amendment should be dismissed because he has not and cannot plead facts that would establish a claim for relief under the Fifteenth Amendment.

/ / /

/ / /

*/ / /*

V. **PLAINTIFF HAS NOT STATED A CLAIM FOR RELIEF UNDER THE TWENTY-SIXTH AMENDMENT.**

To state a claim for relief under the Twenty-Sixth Amendment, Plaintiff must show that his right to vote has been "denied or abridged . . . on account of age." U.S. Const. amend. XXVI. The Twenty-Sixth Amendment was aimed solely at providing the right to vote to people in the eighteen to twenty-year-old age bracket who were being conscripted to fight in the nation's wars but forbidden from voting in federal elections. *See, e.g.,* Dwight D. Eisenhower, State of the Union Address (1954) ("For years our citizens between the ages of eighteen and twenty-one have, in time of peril, been summoned to fight for America. They should participate in the political process that produces this fateful summons."). This amendment has no impact at all on the ability of individual States to determine the other qualifications of a voter. *See* U.S. Const. art. I, § 2, cl. 1 ("[T]he Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature."); *Lassiter v. Northampton Cty. Bd. of Elections*, 360 U.S. 45, 50 (1959) (holding that States have broad power to determine conditions for suffrage, absent a course of conduct that the Constitution condemns). Because A.R.S. § 16-101(A)(5) applies equally to all felons of voting age, Plaintiff cannot state a claim that A.R.S. § 16-101(A)(5) violates the Twenty-Sixth Amendment.

VI. **A.R.S. § 16-101(A)(5) IS CONSTITUTIONAL.**

Plaintiff has made his allegations under the Fifteenth and Twenty-Sixth Amendments, presumably with full knowledge that courts have consistently upheld limitations on the right to vote for felons under the Fourteenth Amendment. *See Richardson*, 418 U.S. at 56 (finding that the Constitution permits a State to disenfranchise felons who have otherwise completed their sentence and parole); *Lassiter*, 360 U.S. at 51 ("Residence requirements, age, previous criminal record are obvious examples indicating factors which a state may take into consideration in determining the

qualifications of voters.") (internal citations omitted); *Harvey v. Brewer*, 605 F.3d 1067, 1081 (9th Cir. 2010) (holding that state statutes disenfranchising felons are constitutional and rationally related to a legitimate state interest); *Owens v. Barnes*, 711 F.2d 25, 27 (3d Cir. 1983) (applying *Richardson* to find that classifications regarding felon disenfranchisement are to be analyzed using rational basis review); *Williams v. Taylor*, 677 F.2d 510, 514 (5th Cir. 1982) (holding that a felon's "interest in retaining his right to vote is constitutionally distinguishable from the 'right to vote' claims of individuals who are not felons."); *see also Romer v. Evans*, 517 U.S. 620, 634 (1996) (distinguishing the facts at issue from the disenfranchisement of felons, stating that such disenfranchisement is "unexceptionable").  Plaintiff's attempt to circumvent these cases should not succeed; regardless of the provision under which Plaintiff brings his Complaint, A.R.S. § 16-101(A)(5) is a constitutionally permissible qualification on the right to vote.

### VII.  NO AMENDMENT TO THE COMPLAINT CAN CURE THE DEFECTS IN PLAINTIFF'S CLAIM.

Plaintiff's Amended Complaint should be dismissed with prejudice because there are no amendments that would be sufficient to remedy the defects in the claim. *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 767 (9th Cir. 1986) ("The denial of plaintiff's motion for leave to amend was a proper exercise of discretion because amendment would have been futile.").  Pursuant to this Court's order, the Plaintiff and Defendant conferred via telephone on February 5, 2016 before this Motion to Dismiss was filed.  During the call, Plaintiff failed to provide any new facts that would sustain a claim for relief.  Indeed, the Amended Complaint not only fails to allege sufficient facts to entitle Plaintiff to relief, it seeks relief for circumstances that are not actionable.  Because Plaintiff has no legally cognizable claim, no amendments are able to save his Amended Complaint and the Court should dismiss it with prejudice in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## VIII. CONCLUSION

Plaintiff's claim is not actionable. The Eleventh Amendment bars all of his claims against the State, and it bars his claim for money damages against the Secretary. Plaintiff also seeks injunctive relief against the Secretary; however, Plaintiff's facts do not provide any support for the contention that his constitutional rights were violated. Moreover, because the facts complained of—specifically, that Plaintiff alleged that his felony conviction bars him from registering to vote—are not unconstitutional, Plaintiff cannot amend his Amended Complaint to state a claim for which relief may be granted. Therefore, the Court should dismiss Plaintiff's Amended Complaint with prejudice.

Respectfully submitted this 16th day of February, 2016.

                                        Mark Brnovich
                                        Attorney General

                                        s/ Kara M. Karlson
                                        James Driscoll-MacEachron
                                        Kara M. Karlson
                                        Assistants Attorney General
                                        Attorneys for Defendants

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following, if CM/ECF registrants, and mailed a copy of same if non-registrants, this 16th day of February, 2016:

Brian Edward Malnes
2157 W. Alaska Ave.
Flagstaff, AZ  86001
Plaintiff pro per

 s/ Maureen Riordan

11

**CERTIFICATION OF CONFERRAL**

I certify that I conferred with Plaintiff Brian Malnes via telephone on February 5, 2016 to determine whether an amendment to the Complaint would resolve the issues raised in this Motion to Dismiss, pursuant to this Court's order. After a good faith discussion, the parties were unable to resolve the issues raised in this Motion.

s/ Kara Karlson

#4911641